**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **ELLEN ROSS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **CIVIL ACTION 06-0275-WS-B** |
| | ) |
| **BALDWIN COUNTY BOARD OF** | ) |
| **EDUCATION,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

At the Final Pretrial Conference conducted on January 22, 2008, defendant Baldwin County Board of Education raised certain legal questions concerning the viability of plaintiff Ellen Ross's Title VII retaliation cause of action.  These issues were not submitted on summary judgment, but were instead raised for the first time in connection with the Final Pretrial Conference.  Despite this procedurally unusual posture, the undersigned entered an Order (doc. 105) directing the parties to submit limited supplemental briefing on those narrow issues.  The parties having done so, the Board's new arguments concerning the legal sufficiency of the retaliation claim are properly before the Court for disposition at this time.

**I.      Procedural History.**

On May 2, 2006, plaintiff Ellen Ross filed a Complaint (doc. 1) in this District Court against defendants Baldwin County Board of Education and Terry Beasley.  The Complaint alleged causes of action against both defendants for sexual harassment and retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*; an equal protection claim against Beasley pursuant to 42 U.S.C. § 1983; a state-law claim against the Board for negligent/wanton supervision; and state-law claims against Beasley for assault and battery, invasion of privacy, and outrage.

After the close of discovery, Senior District Judge Butler (to whom this action was originally assigned) entered a pair of summary judgment orders on September 11, 2007.  One Order (doc. 77) effectively dismissed Ross's Title VII claims against Beasley pursuant to the

well-settled principle that individual employees cannot be liable under Title VII.  The other claims against Beasley remain for trial.  Judge Butler's other Order (doc. 76) granted summary judgment in the Board's favor on Ross's sexual harassment claim on the grounds that (a) plaintiff's evidence did not establish that any tangible employment actions were taken against her; (b) the evidence established the *Faragher/Ellerth* affirmative defense, as a matter of law; and (c) plaintiff's direct liability theory failed in the absence of evidence that the Board knew or should have known that Beasley was sexually harassing Ross.  With respect to the retaliation claim, the Order recognized that the Board "raises only one challenge to plaintiff's retaliation claim – whether plaintiff can prove that she suffered an adverse employment action."  (Doc. 76, at 16.)  In answering this question affirmatively, Judge Butler explained that the Board's arguments were predicated on decisional authority predating *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), wherein the Supreme Court adopted a broad adverse action standard under which a Title VII retaliation plaintiff need show only that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker" from engaging in protected activity.  126 S.Ct. at 2415.  On that basis, Judge Butler rejected the Board's argument that Ross's retaliation claim fails as a matter of law because the allegedly retaliatory actions taken against her had no effect on her employment.  (Doc. 76, at 17.)

        In a footnote, Judge Butler also addressed the Board's tacit assertion that Ross had not satisfied the "causal connection" element of a *prima facie* case of Title VII retaliation, dismissing that contention as "off-base in several respects."  (Doc. 76, at 17 n.12.)  In particular, Judge Butler concluded that the record showed that Ross suffered retaliation after threatening to report Beasley for sexual harassment, that Ross was actively working when some of the adverse actions occurred, that Ross remained a Board employee throughout the duration of the alleged retaliatory acts, and that *Burlington Northern* renders a retaliation claim cognizable even for adverse actions that do not affect a plaintiff's employment status.

        Several months later, in January 2008, after this action had been transferred to the docket of the undersigned, the Board raised a new argument concerning the retaliation claim in the context of the parties' joint Pretrial Order (doc. 99).  As presented in that document, and as fleshed out in the ensuing pretrial conference, the legal issue presented has the following three

subparts: "(a) whether the Board was on notice of any protected activity in which the plaintiff engaged; (b) whether the Board retaliated against the plaintiff in any respect for such protected activity; and (c) whether the Board may be held liable for any retaliatory conduct of defendant Beasley if the Board had notice of neither the protected activity nor Beasley's actions." (Order (doc. 105) dated January 23, 2008, at 1.) The Court decided to allow supplemental briefing on these issues, despite the fact that the time for pursuing a Rule 56 Motion had long since expired without the Board having raised those matters.[1] In authorizing briefing of these discrete issues, the Court cautioned the parties not to rehash matters already decided by Judge Butler's summary judgment order of September 11, 2007.

## II.    Relevant Factual Background.[2]

Most of the facts needed to rule on the Board's legal arguments may be culled from Judge Butler's summary judgment Order (doc. 76). Without restating them verbatim, the key facts (viewing the record most favorably to plaintiff) are these: Ross was hired by the Board as a teacher in 1985, and was assigned to Fairhope Elementary School to teach special education. In late 2000, the school's principal, defendant Terry Beasley (who had been Ross's direct supervisor since 1995), began to engage in inappropriate workplace conduct. Initially, Beasley's conduct consisted of asking Ross to remove pornographic material from his computer, telling lewd jokes to Ross and others, having inappropriate contact with his secretary, making light of a

---

[1]    It would have been far preferable and far more efficient for the Board to submit all of its legal arguments for judgment as a matter of law at one time, rather than through piecemeal submissions. By all appearances, the Board could have raised the arguments presently before the Court in its Rule 56 Motion submitted to Judge Butler back in June 2007, but elected not to do so. This sequence of events is particularly inefficient in this case because the net effect is that two different judges in this District Court have examined the legal sufficiency of plaintiff's claims through the prism of the summary judgment record on two different occasions before trial. Although supplemental briefing was allowed in these circumstances, counsel should not assume that multiple bites at the summary judgment apple will be authorized in this District Court as a matter of course.

[2]    Because the Board is seeking a ruling dismissing Ross's retaliation claims against it as a matter of law, the Court construes the record, including all evidence and factual inferences, in the light most favorable to Ross. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiff's evidence is taken as true and all justifiable inferences are drawn in her favor, as would be the case if these issues had been presented on a Rule 56 motion.

-3-

situation in which a student was found engaging in sexual activity in a classroom, and the like. In late 2002, two teachers (but not Ross) complained to the Board's president about Beasley's behavior, specifically the inappropriate jokes and interactions with his secretary; however, the Board neither investigated nor took corrective action at that time.

In 2004, Beasley's inappropriate conduct escalated and became increasingly directed at Ross. He would make vulgar gestures at her when their paths crossed in the hallways. In one instance, Beasley told Ross that she should lean across his desk, apparently propositioning her. Most serious of all, on five or more occasions between May 2004 and early September 2004, Beasley physically grabbed Ross's breasts and/or crotch on school grounds, either in Ross's classroom or in Beasley's office. On the last of these occasions, Ross told Beasley that she would report him for sexual harassment if he ever did that again. Within days after that incident, Beasley took away Ross's secondary resource room and required her to share a room with the school psychometrist, thereby impairing Ross's ability to provide special instruction to her more severely handicapped students. The room that Beasley took away from Ross remained empty for the entire 2004-05 school year. When Ross and the psychometrist spoke to Beasley about the situation, he refused to consider alternative arrangements and stated that Ross was the only teacher he disliked enough to make her share a room.[3] Aside from the resource room issue, Beasley showed displeasure with Ross in other ways. He yelled at her during staff meetings. He disciplined her in the presence of staff members and parents. He refused to authorize funds to repair her copier machine and questioned her use of the poster machine. And he refused to allocate funds to pay for an educational program required for two of Ross's students.

In December 2004, Ross first reported Beasley's harassment to Board officials. At that time, she met with the Board superintendent, Dr. Faron Hollinger, and informed him that Beasley had sexually assaulted her and had otherwise engaged in sexually inappropriate behavior. This occasion marked the first time that Ross had ever complained directly to the

---

[3]     As to the resource room issue, a Board official has testified that with regard to space allocation and room assignments, "the principal uses his judgment in determining what is best for his school." (Knight Dep., at 47.) Thus, in the light most favorable to Ross, the record reflects that Beasley's decision to take away Ross's resource room shortly after she complained to him of sexual harassment was made without meaningful Board oversight or approval.

Board that Beasley had sexually harassed her.  The Board promptly retained a private

investigator to look into Beasley's complaints.[4]  By the time Ross complained to the Board in

December 2004, she was on a medical leave of absence because of a back condition.  That

medical leave of absence was extended in March 2005 based on her diagnosis of Post-Traumatic

Stress Disorder arising from Beasley's conduct.  In late 2005, Ross took disability retirement and

ended her employment with the Board.[5]  Thus, while Ross remained a Board employee for

approximately one year after she complained to the Board about Beasley, she never came back to

work or was otherwise physically present at the school during that time period.[6]  Ross maintains

that Beasley's retaliatory acts persisted during that leave of absence, in the form of cutting off

her internet and communication access to the school, denying her participation in school

activities, removing her paraprofessional from the school, and the like.

    Aside from the foregoing, several additional facts in plaintiff's supplemental evidentiary

submission are pertinent.  As principal of Fairhope Elementary School, Beasley is tasked with

supervising the school's employees.  (Beasley Dep., at 15.)  In this capacity, Beasley has

"minimal" day-to-day interaction with Board administrators concerning his supervision of those

employees.  (*Id.*)  With respect to hiring and firing decisions, Beasley makes recommendations

rather than final decisions; however, "for the most part the central office people leave that

decision to the local school principal."  (*Id.* at 16.)  For "minor things," the Board and its

administrators leave disciplinary action to the principal's discretion.  (*Id.* at 17.)  Plaintiff's

_____

    [4]    Although not directly germane to the legal issues presented by the parties at this
time, the Board's investigation proceeded intermittently throughout 2005 and ultimately
culminated in a written letter of reprimand to Beasley issued in December 2005, with a
requirement that he attend sensitivity training.

    [5]    The record reflects that Ross had a number of medical problems and health issues,
and it is unclear which of those (in isolation or collectively) prompted her decision to accept
disability retirement in late 2005.

    [6]    During the prolonged, multi-stage investigation of Ross's sexual harassment
complaints, the Board offered to relocate Ross's classroom to Fairhope Intermediate School in
the summer of 2005, and to place Ross under the direct supervision of that school's principal,
rather than Beasley.  On at least one other occasion in 2005, the Board offered to remove Ross
from Beasley's supervision, or even to transfer her to a different school altogether.  She declined
these offers and never returned to her job.

supplemental submission also reflects that "the principal of any particular school ... would be primarily responsible for enforcing policies and procedures of the Baldwin County School Board, including any discrimination policies." (Knight Dep., at 19.)

**III.   Analysis.**

   *A.   Governing Legal Standard.*

   Title VII bars an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 586 (11th Cir. 2000) ("Retaliation is a separate violation of Title VII.").[7] In the absence of direct evidence, Title VII retaliation claims turn on the familiar *McDonnell Douglas* burden-shifting analysis applicable to other Title VII claims. *See Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002). Thus, a plaintiff bears the burden of establishing a *prima facie* case of retaliation by showing that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal link between her protected activity and the adverse action. *See Davis v. Coca-Cola Bottling Co. Consol.*, --- F.3d ----, 2008 WL 314962, *11 n.52 (11th Cir. Feb. 6, 2008); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).[8]

   In its summary judgment motion, the Board argued only the second element of this *prima*

---

   [7]      *See also Sullivan v. National R.R. Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999) ("retaliation is a separate offense under Title VII; an employee need not prove the underlying claim of discrimination for the retaliation claim to succeed").

   [8]      If the plaintiff makes a *prima facie* showing, then the employer must articulate a legitimate, non-retaliatory reason for the challenged decision. *See Brochu*, 304 F.3d at 1155; *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). If the employer produces legitimate reasons for the adverse action, then the plaintiff must show that these stated reasons are pretextual. *See Brochu*, 304 F.3d at 1155. Of course, the ultimate burden rests on the plaintiff to show that the employer's stated reason is a pretext for unlawful retaliation. *See Pennington*, 261 F.3d at 1266. The parties' supplemental filings address only Ross's ability to make out a *prima facie* case; therefore, the Court's analysis focuses on that step, rather than on the question of pretext.

*facie* standard, maintaining that Ross could not show a materially adverse action.  Judge Butler rejected this argument, finding that Beasley's alleged retaliatory acts were actionable even if they did not tangibly affect Ross's employment.  This determination is fully justified by applicable precedents.  *See, e.g., Burlington Northern*, 126 S.Ct. at 2415 ("a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from" complaining about sexual harassment); *Davis*, 2008 WL 314962 at *11, n.52 ("The challenged action must be materially adverse from the standpoint of a reasonable employee.").  Now, in its supplemental filings, the Board argues that plaintiff can satisfy none of the three elements of the *prima facie* case because she cannot show that she engaged in protected activity as to any employment practice of the Board, that she sustained a materially adverse action, that the Board had knowledge of her protected activity, or that any of Beasley's retaliatory acts were attributable to the Board.  Without retreading ground covered in Judge Butler's Order, the Court will consider the Board's present arguments concerning each of the three elements of a *prima facie* case.[9]

**B.      Protected Activity Element.**

The Board maintains that Ross's retaliation claim is not actionable, as a matter of law, because she failed to engage in statutorily protected activity.  Although the record in the light most favorable to Ross reflects that she complained directly to Beasley (her direct supervisor) in September 2004 to cease and desist from sexually harassing her, and threatened to report him if he did not, the Board's position is that such conduct is not entitled to protection under Title VII.  According to the Board, "Ross's opposition to Beasley is not a protected activity because it was not directed toward a practice *of the Board*," but was instead confined to a practice of Beasley individually.  (Board Brief (doc. 106), at 8.)

The Court disagrees.  Case law is legion for the proposition that internal complaints of sexual or racial harassment by a supervisor or co-worker constitute protected activity for purposes of Title VII.  *See Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th

---

[9]      The Court's analysis proceeds in recognition of the well-established principle that Ross's burden of establishing a *prima facie* case is not heavy.  *See, e.g., Crapp v. City of Miami Beach*, 242 F.3d 1017, 1020 (11th Cir. 2001) ("the *prima facie* requirement is not an onerous one").

Cir. 2001) ("[s]tatutorily protected expression includes internal complaints of sexual harassment to superiors"); *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 507 (11th Cir. 2000) ("Statutorily protected expression includes filing complaints with the EEOC and complaining to superiors about sexual harassment.").[10]  That is precisely what Ross did here. Courts have routinely deemed the protected activity prong of the *prima facie* test for retaliation satisfied when a plaintiff complains promptly to a supervisor about sexually or racially offensive conduct.  *See, e.g, Butler v. Alabama Dep't of Transp.*, 512 F. Supp.2d 1209, 1226 (M.D. Ala. 2007) (finding protected activity prong satisfied where plaintiff tried to complain to supervisor of co-worker's racial slur a few hours after it occurred, but supervisor would not listen to her, such that employee had good faith belief under the circumstances that employer was engaged in unlawful employment practice); *Burroughs v. Smurfit Stone Container Corp.*, 506 F. Supp.2d 1002, 1017 (S.D. Ala. 2007) (plaintiff satisfied protected activity element by speaking to supervisor regarding alleged sexually harassing activity by co-worker).

The Board's reliance on *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956 (11th Cir. 1997), is misplaced.  *Little* concerned a single racial slur to describe blacks uttered by a white male co-worker in speaking with the plaintiff (who was also a white male), as to which the plaintiff failed to complain to supervisors until eight months later.  Based on the specific facts of that case, the *Little* court concluded that the co-worker's solitary comment was not attributable to the employer and that the plaintiff's opposition to it was not protected activity. *See id.* at 959.  However, "[t]his case, unlike *Little*, opposes the routine discriminatory practice of management employees ... and not action or comments from co-workers to co-workers."

---

[10]      *See also Gupta*, 212 F.3d at 587 (district court correctly instructed jury that internal complaint of sexual harassment and filing of EEOC charge were activities protected by Title VII); *Rollins v. Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989) (Title VII's retaliation provision protects employees "who informally voice complaints to their superiors"); *Carter v. University of South Alabama Children's & Women's Hosp.*, 510 F. Supp.2d 596, 608 (S.D. Ala. 2007) (recognizing "clear Eleventh Circuit precedent declaring that internal complaints of sexual harassment ... constitute statutorily protected expression under Title VII"); *Corbitt v. Home Depot USA, Inc.*, 2008 WL 616057, *16 (S.D. Ala. Mar. 3, 2008) ("Internal complaints about sexual harassment ... are statutorily-protected activities."); *Butler v. Alabama Dep't of Transp.*, 512 F. Supp.2d 1209, 1226 (M.D. Ala. 2007) ("Protected activity includes EEOC charges as well as complaints to superiors about sexual harassment.").

*Brown v. Metropolitan Atlanta Rapid Transit Authority*, 2008 WL 60279, *5 (11ᵗʰ Cir. Jan. 7, 2008).  The evidence in the light most favorable to Ross is that her direct supervisor had grabbed her breasts and/or crotch in the workplace on at least five occasions between May 2004 and September 2004.  It was both objectively and subjectively reasonable for Ross to view this ongoing barrage of physical abuse by her boss as an indication of an unlawful employment practice, such that her internal complaint constituted protected activity under Title VII. Defendant's argument to the contrary is without merit.

Similarly unavailing is the Board's assertion that "[m]erely stating her opposition to the alleged harasser himself does not meet the first required element for establishing a *prima facie* case of retaliation."  (Board Brief, at 9-10.)  The Board offers no authority for this startling proposition.  There is persuasive authority to the contrary.  For example, one appellate court has opined that an employee "engaged in the most basic form of protected activity when she told her supervisor, Hudson, to stop his offensive conduct."  *Ogden v. Wax Works, Inc.*, 214 F.3d 999, 1007 (8ᵗʰ Cir. 2000) (internal quotations omitted); *see also Reed v. Cracker Barrel Old Country Store, Inc.*, 133 F. Supp.2d 1055, 1070 (M.D. Tenn. 2000) (deeming employee to have engaged in protected conduct when she told her immediate supervisor directly to stop sexually harassing her); *Quarles v. McDuffie County*, 949 F. Supp. 846, 853 (S.D. Ga. 1996) ("Clearly, Quarles engaged in the most basic form of protected conduct; namely, telling a harasser, who was also serving as her supervisor, to cease all forms of physical and verbal harassment."); *Tate v. Executive Management Services, Inc.*, 2007 WL 1650410, *2 (N.D. Ind. June 4, 2007) ("A straightforward reading of the statute's text requires finding that rebuffing sexual harassment can in some situations be considered opposition to an unlawful employment practice.").

The reasoning of the *Ogden* line of authority is sound.  It would be anomalous, and would undermine the fundamental purpose of the statute, if Title's VII's protections from retaliation were triggered only if the employee complained to some particular official designated by the employer.[11]  Under the Board's conclusory formulation, an employee who confronts a

_____

[11]     Such a holding would also contravene the plain language of the applicable sexual harassment policy.  The policy promulgated by the Board to Ross and other staff at Fairhope Elementary School in the school's employee handbook provided as follows: "If any employee perceives comments, gestures, or actions from any employee, including supervisors or members

supervisor harasser and demands that the harassment stop would have no protection from retaliation and the supervisor would be free to engage in acts of retribution against her at will with no recourse for the victim under Title VII's anti-retaliation provisions.  Such an outcome would render Title VII's prohibition on retaliation illusory for any employee who stands up to a harasser supervisor to bring a halt to a sexually hostile work environment.  The Court declines to read Title VII so narrowly as to frustrate its remedial purpose and transform the protection against retaliation into a mirage.  *See, e.g., Deravin v. Kerik*, 335 F.3d 195, 204 (2nd Cir. 2003) ("it is indisputedly true that we must interpret Title VII's anti-retaliation provision in light of Title VII's overall remedial purpose").  For all of these reasons, the Court finds that plaintiff's unequivocal demand that her supervisor cease groping her in the workplace unquestionably constituted protected conduct satisfying the first element of the *prima facie* test under Title VII.

### C.    Adverse Action Element.

Next, the Board contends that Ross has failed to satisfy the second prong of the *prima facie* test, which requires her to show that she suffered a materially adverse action.  According to the Board, the alleged retaliatory acts perpetrated by Beasley after Ross complained about his sexually harassing conduct fail the meet the requisite substantiality threshold.

Judge Butler's summary judgment Order (doc. 76) specifically addressed this argument and concluded that Ross had made a sufficient showing of a materially adverse action to satisfy that *prima facie* element.  (*See* doc. 76, at 16-17.)  In authorizing the parties to submit trial briefs on the retaliation question, this Court wrote: "The parties are cautioned not to rehash issues already decided by Judge Butler in his summary judgment order (doc. 76) entered on September 11, 2007."  (Doc. 105, ¶ 2.)  The Board's argument ignores that admonition, and seeks to have this Court revisit legal issues previously argued before and decided by Judge Butler.  This Court

---

of management, to be offensive, ***the employee should notify his immediate supervisor*** and/or the division superintendent for personnel services."  (Plaintiff's Exh. 26 (doc. 68-18), at 15 (emphasis added).)  The Board cannot pull the rug out from under Ross's feet on the grounds that she complained to the wrong Board official when she followed the letter of the harassment policy contained in her employee handbook in reporting the harassment to her immediate supervisor.

declines to do so.[12]

   **D.     Causal Connection Element.**

   Finally, the Board asserts that plaintiff's evidentiary showing is insufficient under the third element of the *prima facie* test for retaliation, which requires the plaintiff to show a causal connection between the protected conduct and the adverse acts.  To establish such a causal connection, "a plaintiff must show that the decision-makers were aware of the protected conduct, and that the protected activity and the adverse employment action were not wholly unrelated." *Gupta*, 212 F.3d at 590 (quotations and brackets omitted).  The thrust of the Board's argument is that it cannot be liable for any acts of retaliation predating December 2004 because the Board lacked the requisite knowledge of the protected conduct or the underlying harassment until Ross met with Dr. Hollinger in December 2004.

   The Board misreads the applicable standard.  There is no requirement that the employer globally have knowledge of the protected conduct; rather, that knowledge need only rest with the decision maker within that organization.  *See, e.g., Goldsmith*, 513 F.3d at 1278 ("In order to show the two things were not entirely unrelated, the plaintiff must generally show that the decision maker was aware of the protected conduct at the time of the adverse employment action."); *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1119 (11th Cir. 2001) ("It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, ***the plaintiff must show that the person taking the adverse action was aware of the protected expression***.") (emphasis added); *Collins v. Board of Trustees of University of Alabama*, 2006 WL 3522043, *1 (11th Cir. Dec. 6, 2006) (affirming dismissal of

_____

   [12]     Besides, Judge Butler's Order makes plain the fallacy in the Board's position.  In arguing that Ross has not made a sufficient showing of adverse action, the Board relies exclusively on *Gupta v. Florida Bd. of Regents*, 212 F.3d 571 (11th Cir. 2000).  (Board Brief, at 11-13.)  But *Gupta* no longer reflects the applicable standard for an adverse action in the retaliation context, in the wake of the Supreme Court's 2006 *Burlington Northern* decision.  Judge Butler specifically rejected the Board's attempt to engraft pre-*Burlington Northern* case law onto the adverse action showing required under the second element of a *prima facie* case of retaliation, and explained that *Burlington Northern* supplies the appropriate rule of decision.  (Doc. 76, at 17.)  Yet the Board has attempted to do exactly the same thing in its trial brief, and has made no attempt to apply the proper *Burlington Northern* standard to its arguments concerning the second prong of the *prima facie* test.

retaliation claims where "there is no evidence in the record that the supervisor responsible for Collins' workload was aware of his protected activity before increasing the workload"). The decision maker in this case appears to have been Beasley. It was Beasley who took away Ross's resource room. It was Beasley who refused to authorize funds to repair Ross's copier machine. It was Beasley who demeaned, belittled, and berated Ross in the presence of co-workers and parents. Without question, Beasley had knowledge of Ross's September 2004 complaint of sexual harassment because that complaint was directed to him. This sequence of events plainly satisfies the causal connection requirement.[13]

To the extent that the Board would argue that all of Beasley's decisions adverse to Ross were subject to approval by the Board, such that the Board (and not Beasley) was the final decision maker, the record in the light most favorable to Ross establishes that the Board simply rubber stamped the allegedly retaliatory decisions, neglected to conduct its own investigation as to those matters, and left them to Beasley's discretion in performing his duties as principal of Fairhope Elementary School. As such, Beasley's alleged retaliatory animus can be imputed to the Board under the so-called "cat's paw" doctrine. "Under the cat's paw theory, even if the decisionmaker holds no discriminatory animus, the discriminatory animus of the recommender can be imputed to the decisionmaker when the decisionmaker does not conduct his or her own independent investigation." *Williams v. Alabama Dep't of Transp.*, 509 F. Supp.2d 1046, 1059 (M.D. Ala. 2007); *see also Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1332 (causation may be established in discrimination cases where decision maker followed biased recommendation without independent investigation, such that decision maker was a mere conduit to give effect to recommender's discriminatory animus). The bias of a recommender "corrupts the entire process where the decisionmaker merely rubber stamps the recommendation." *Williams*, 509 F. Supp.2d at 1060. Even if Beasley were not technically the decision maker responsible for the alleged retaliatory acts, there is sufficient evidence for Ross to reach the jury on a "cat's paw" theory.

---

[13]     Besides, the Board's argument ignores the fact that Ross has cited a number of allegedly retaliatory acts by Beasley that continued into 2005, while she was on a leave of absence but still employed by the Board, after she complained to the Board's superintendent. That fact was one that Judge Butler noted in deeming the Board's initial "causal connection" arguments off-base. (*See* doc. 76, at 17-18 n.12.)

Undergirding the Board's entire argument is its apparent contention that the retaliatory acts of a supervisory employee are not attributable to an employer unless a more high-ranking manager or supervisor within the organization has knowledge of the underlying protected conduct and makes the retaliatory decision.  In terms of this case, then, the Board would have the Court find as a matter of law that a school board cannot be liable for retaliatory acts perpetrated by a school principal against a subordinate teacher for complaining of sexual harassment to the principal unless the Board (or some agent thereof more senior than the school principal) had knowledge of those complaints and retaliation.  The Board would thus completely dissociate itself from its principal at Fairhope Elementary School for purposes of fixing Title VII liability for retaliation.  But the Board has failed to cite a single authority to support such a theory, much less to explain in any cogent manner how extant Title VII jurisprudence can be construed in favor of such a premise.  Is the Board making some kind of agency argument?  Is it attempting to import wholesale certain concepts narrowly applied in the Title VII sexual harassment context into the retaliation realm?  This Court cannot discern the basis for the Board's argument, because it has only the Board's unvarnished say-so from which to operate.  This Court will not develop a party's arguments for it, particularly where (as here) that party has been given a second opportunity via the trial briefing process to present summary-judgment style arguments that could and should have been submitted during the Rule 56 process.[14]

Based on the foregoing, the Court readily concludes that Ross has made a sufficient showing that the protected conduct and the alleged retaliation were not entirely unrelated to satisfy her *prima facie* burden in that regard.

**IV.    Conclusion.**

For all of the foregoing reasons, the Court concludes that plaintiff has made a *prima facie* showing of Title VII retaliation.  The Board's arguments to the contrary in its Trial Brief (doc.

---

[14]    Indeed, the Court's briefing schedule invited the Board to explore this very legal issue in its trial brief.  That Order (doc. 105) enumerated one of the issues presented as "whether the Board may be held liable for any retaliatory conduct of defendant Beasley if the Board had notice of neither the protected activity nor Beasley's actions."  (Doc. 105, ¶ 2.)  The Board's trial brief argues in conclusory fashion that this question should be answered in the negative, but furnishes the Court with neither a precedential nor an analytical basis for so finding.

106) are without merit, and its request for entry of judgment in its favor on plaintiff's retaliation cause of action is **denied**.  This action remains set for jury selection on **April 29, 2008** at **8:45 a.m.**, with jury trial to follow on **May 12, 2008**.

DONE and ORDERED this 24th day of March, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE