IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ELLEN ROSS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION 06-0275-WS-B |
| | ) | |
| BALDWIN COUNTY BOARD OF | ) | |
| EDUCATION, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter comes before the Court on the following pretrial motions: Defendant Baldwin County Board of Education's Motion in Limine Regarding Character Evidence (doc. 110), defendant Terry Beasley's nearly identical Motion in Limine Regarding Character Evidence (doc. 117), the Board's Motion in Limine Regarding Testimony of Linda Jones (doc. 114), Beasley's similar Motion in Limine Regarding Testimony of Linda Jones (doc. 121), the Board's Motion in Limine Regarding Plaintiff's Exhibits (doc. 112), and Beasley's similar Motion in Limine Regarding Plaintiff's Exhibits (doc. 120).[1]  Those Motions have been briefed, and movants have supplemented their filings with a Notice of Filing (doc. 133) attaching the relevant exhibits and deposition pages for the Court's review.  These Motions are now ripe for disposition.

**I.    Motions Regarding Character Evidence.**

Both the Board and Beasley have filed Motions in Limine in which they seek to proscribe plaintiff, Ellen Ross, from eliciting testimony or otherwise mentioning at trial facts concerning (a) alleged retaliatory acts committed by Beasley against other Board employees, and (b) an alleged inappropriate relationship between Beasley and another Board employee (evidently his

---

[1]    Given the virtually identical framing of the Board's and Beasley's Motions, as well as Beasley's filing of a pleading styled "Notice of Adopting Motions Filed by Codefendant Baldwin County Board of Education" (doc. 116), it is unclear why Beasley filed separate redundant motions in limine.  It surely would have been more efficient for all concerned for defendants to file joint motions rather than duplicating each other's submissions.

secretary, Nancy Jernigan, although defendants' Motions fail to identify her by name).
Defendants maintain that the evidence pertaining to other acts of retaliation is inadmissible
character evidence under Rule 404, Fed.R.Evid., and would unfairly prejudice them.  With
respect to the inappropriate relationship, defendants likewise interpose a Rule 404 objection,
arguing that this evidence would imply that Beasley had engaged in a bad act, that such evidence
"is not relative to and not probative of" the issues the jury will be charged with deciding, and
that such evidence would confuse the jury.  Plaintiff responds that the evidence pertaining to the
Jernigan relationship is relevant to her § 1983 claim against Beasley for a sexually hostile work
environment and is also probative as to the sufficiency of the Board's investigation and
corrective action.  Plaintiff further asserts that defendants' blanket attempt to exclude all
evidence of other acts of retaliation runs afoul of the Supreme Court's recent decision in
*Sprint/United Management Co. v. Mendelsohn.*

> A.    ***Evidence of Beasley's Relationship with Jernigan.***

Beasley's alleged inappropriate relationship with Jernigan has a vanishingly low
probative value to any issue properly before the jury in this case.  To be sure, Ross has asserted a
claim against Beasley under 42 U.S.C. § 1983 alleging that he violated the Equal Protection
Clause by subjecting her to a sexually hostile work environment and that a motivating factor in
his conduct was plaintiff's gender.  Contrary to plaintiff's assertion, however, Beasley's
allegedly consensual inappropriate relationship with someone else in the workplace neither
demonstrates nor tends to show that Beasley subjected Ross to a sexually hostile work
environment.  Courts have routinely excluded such evidence.[2]  Simply put, "consensual affairs

---

[2]    *See, e.g., Williams v. City of Kansas City, Mo.*, 223 F.3d 749, 755-56 (8th Cir.
2000) (evidence of supervisor's prior consensual relationships with customers and subordinates
was improperly admitted given its minimal relevance and inflammatory nature); *Stahl v. Sun
Microsystems, Inc.*, 19 F.3d 533, 539 (10th Cir. 1994) (district court did not abuse discretion in
refusing to admit evidence that supervisor had a sexual relationship with his administrative
assistant, where probative value of such evidence was slight and potential for unfair prejudice
was obvious); *Sherk v. Adesa Atlanta, LLC*, 432 F. Supp.2d 1358, 1370-71 (N.D. Ga. 2006)
(supervisor's sexual relationship with and preferential treatment toward co-worker does not give
rise to hostile work environment because favoritism toward paramour, while perhaps unfair, is
gender-neutral); *Elger v. Martin Memorial Health Systems, Inc.*, 6 F. Supp.2d 1351, 1353 (S.D.
Fla. 1998) ("Generally, the law does not recognize a Title VII claim based on favoritism on

and unwelcome sexual harassment are entirely separate exploits, with distinct motivations and underlying conduct." *Stephens v. Rheem Mfg. Co.*, 220 F.3d 882, 885 (8th Cir. 2000). Even assuming that Beasley's alleged relationship with his secretary has some slight bearing on plaintiff's § 1983 claims against him, that relevance is vastly outweighed by the unfair prejudice that would unquestionably be visited on Beasley if plaintiff were permitted to smear him as a philanderer in the eyes of the jury. *See Stephens*, 220 F.3d at 885 (affirming district court's exclusion of rumors of sexual affairs among defendant's managers and employees on the grounds that the danger of undue prejudice greatly outweighed the evidence's limited probative value).

Nor can plaintiff salvage the Jernigan issue by arguing that such evidence is probative of the sufficiency of the Board's investigation and corrective action after plaintiff complained. There is no sexual harassment claim pending in this action against the Board, such cause of action having been dismissed by Judge Butler on summary judgment many months ago. Rather, as stated in the Amended Pretrial Order (doc. 126) governing these proceedings, plaintiff's sole cause of action against the Board sounds in Title VII retaliation. Whether the Board did or did not investigate Ross's complaints of sexual harassment adequately has no discernable nexus to plaintiff's claim that the Board should be held liable under Title VII for acts of alleged retaliation perpetrated by Beasley after she complained.

Accordingly, the Court finds that evidence that Beasley was engaged in a consensual relationship with Jernigan is inadmissible at trial pursuant to Rules 403 and 404, inasmuch as its negligible probative value is vastly outweighed by the risk of unfair prejudice to defendants. For

---

behalf of a consensual sexual partner."); *O'Patka v. Menasha Corp.*, 878 F. Supp. 1202, 1207-08 (E.D. Wis. 1995) (finding that plaintiff had failed to state a claim of sexual harassment where she alleged that her supervisor engaged in a single, non-coercive sexual relationship with a co-worker, resulting in favoritism to that co-worker and not to plaintiff); *Bateman v. Therapeutic Innovations, Inc.*, 2007 WL 460828, *2 (W.D. Va. Feb. 8, 2007) (deeming evidence of other consensual sexual relationships to have a "quite low" probative value as to plaintiff's hostile work environment theory, with a substantial danger of prejudice, such that the evidence was inadmissible under Rule 404(b)); *Cruz v. Oxford Health Plans, Inc.*, 2004 WL 2609528, *2 (S.D.N.Y. Nov. 17, 2004) (striking from amended complaint allegation that supervisor had consensual affair with another worker as irrelevant and not probative of any pattern of discriminatory conduct or harassment).

that reason, defendants' Motions in Limine Regarding Character Evidence are **granted** insofar as they seek to exclude evidence of the relationship between Beasley and Jernigan.

> **B.      Evidence of Beasley's Retaliation Against Other Employees.**

In their Motions in Limine Regarding Character Evidence, defendants also assert in highly general terms that evidence "about alleged retaliatory acts by [Beasley] committed against other employees" should be excluded.  (Doc. 110, at 1; *see also* doc. 117, at 1.)  These Motions do not identify the employees allegedly involved or the nature, form, scope or temporal dimensions of those alleged retaliatory acts.  This vagueness is fatal to defendants' request.  The Supreme Court has recently rejected a *per se* rule excluding evidence of treatment of other employees in the employment discrimination context.  *See Sprint/United Management Co. v. Mendelsohn*, --- U.S. ----, 128 S.Ct. 1140, 1146-47, 170 L.Ed.2d 1 (2008).  The *Sprint* Court explained that the relevance of evidence of discrimination by other supervisors "is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.  Applying Rule 403 to determine if evidence is prejudicial also requires a fact-specific, context-specific inquiry."  128 S.Ct. at 1147.  The cursory nature of defendants' Motions precludes the Court from conducting the requisite fact-specific, context-specific inquiry to weigh the admissibility of alleged acts of retaliation by Beasley directed at other employees.  Given their manifest insufficiency on this point, defendants' Motions in Limine Regarding Character Evidence are **denied** to the extent they seek exclusion of unspecified evidence of retaliatory acts perpetrated by Beasley against other Board employees.[3]

Although not necessary to this result, the Court observes that, as a general matter, a supervisor's treatment of other employees may be relevant and admissible, not to prove conduct in conformity therewith, but to show that supervisor's state of mind, intent or motive for certain employment-related acts against the plaintiff.  *See, e.g., Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1286 (11th Cir. 2008) (finding that "me too" evidence may be admissible under Rule

---

[3]      In so concluding, the Court declines to adopt plaintiff's reasoning that this "other employees" evidence is relevant to show notice to the Board and to assess the adequacy of the Board's investigation of plaintiff's complaints.  Whether the Board adequately investigated plaintiff's complaints appears irrelevant to the triable issues of whether Beasley retaliated against her and whether the Board may be held liable for Beasley's retaliatory acts.

404(b) to prove employer's motive, intent or plan to discriminate against plaintiff); *Heyne v. Caruso*, 69 F.3d 1475, 1480 (9th Cir. 1995) ("evidence of [a supervisor's] sexual harassment of other female workers may be used, however, to prove his motive or intent in discharging [an employee]," such that trial court erred in excluding evidence that supervisor harassed other employees); *Zubalake v. UBS Warburg, LLC*, 382 F. Supp.2d 536, 544 (S.D.N.Y. 2005) ("As a general rule, the testimony of other employees about their treatment by the defendant is relevant to the issue of the employer's discriminatory intent.") (citations omitted).  Any defense objections to "me too" evidence that Ross may offer at trial will be evaluated using these principles.

## II.    Motions Regarding Testimony of Linda Jones.

Next, the Court considers defendants' Motions in Limine Regarding Testimony of Linda Jones (docs. 114, 121), which plaintiff intends to introduce at trial by reading extensive excerpts from her deposition transcript to the jury.  Generalizing from defendants' 19 objections to particular pages and lines of the deposition excerpts (as documented in defendants' objection found at document 102 and incorporated by reference in their Motions), the Motions reflect four principal categories of objections, to-wit: (a) the testimony in question includes hearsay that does not come within any exception to the hearsay exclusion; (b) the testimony includes references to Beasley's relationship with Jernigan, which are prejudicial and inadmissible; (c) the testimony includes references to alleged acts of retaliation by Beasley against other employees, which is inadmissible character evidence; and (d) Beasley objects to any mention by plaintiff, counsel or witnesses that Jones is deceased, on the grounds that such information might prompt the jury to give undue weight to Jones' deposition testimony.[4]

---

[4]    Additionally, in multiple instances, defendants object in their Motions in Limine that certain answers given by Jones were not responsive to the questions asked of her.  Such objections should have been interposed at the deposition so that the examining counsel could have framed follow-up questions to which that testimony would have been responsive; however, defense counsel did not express any such objections to those excerpts during the deposition.  It is unfair and unreasonable to withhold objections relating to the form of a question or response, then spring them on opposing counsel, long after the deposition has concluded and the witness is deceased, thereby depriving opposing counsel of the opportunity to rectify any defects in form by framing queries to which the desired information would have been responsive.  On that basis, this line of objections expressed in the Motions in Limine is **overruled**.

A.      *Hearsay Objections.*

On page 12 of the deposition transcript, Jones testified that Ross had told her that Beasley
had "reached out and touched her and made maybe some obscene mouth gestures toward her."
That statement is obviously hearsay and plaintiff has articulated no exception pursuant to which
it might be admissible.  This testimony concerning what Ross told Jones will be **excluded**.  That
said, this Court will not prohibit plaintiff from introducing the portion of page 12 in which Jones
testified that she (Jones) observed Beasley in Ross's room frequently, that the secretary appeared
angry about it, and the like (lines 9-21).  To the extent defendants seek to exclude that testimony
on hearsay grounds, the objection is **overruled** because this testimony is not hearsay.

Defendants also object to excerpts from page 13 of the Jones deposition transcript as
being hearsay.  They are not.  In this testimony, Jones simply stated the time frame in which she
observed Beasley in Ross's room, and that she (Jones) was made uncomfortable by the
secretary's reaction.  The hearsay objection to this testimony is **overruled**.

Jones testified on pages 27 and 28 of her deposition transcript that she had spoken with
Board president Julia Summerlin about Jones's concerns regarding Beasley's professionalism,
such as his comments about "fat people" and how those comments made Jones feel.  Jones also
offered certain opinions concerning whether Ross or Beasley lie.  The Court agrees with
defendants that such testimony is inadmissible.  Jones' statements about what she told a Board
representative are hearsay.  They are also irrelevant.  That Jones complained to Summerlin that
Beasley made derogatory statements about overweight people is not relevant to any issue before
the jury.  Plaintiff's attempt to introduce this testimony appears calculated to taint Beasley's
character in the eyes of the jury, and is therefore improper.[5]  And Jones' beliefs about Ross and

---

[5]      Plaintiff would justify the introduction of such testimony to show "notice to
BCBE of the need to investigate Ross' claims of retaliation."  (Doc. 125, at 10 ¶ 7.)  The Court
cannot accept this theory of admissibility for two reasons.  First, there is a logical disconnect
between Jones' complaints that Beasley made unflattering comments about overweight people
and plaintiff's belief that this report somehow placed the Board on notice of the need to
investigate Ross's retaliation claims.  Second, and more generally, plaintiff has never explained
why the issue of whether the Board was on notice of a need to investigate Beasley is relevant to
any claim remaining in this case.  As mentioned, Ross's sole cause of action against the Board
sounds in retaliation under Title VII, and is predicated on retaliatory acts that Beasley (an
elementary school principal, her direct supervisor, and the Board's decisionmaker for all such

Beasley's propensities to lie (to wit, that she has never known either of them to lie) are not admissible either, absent the predicate required by Rule 608(a)(2). This evidence will be **excluded**.

Plaintiff also proposes to introduce page 34 of Jones's deposition transcript, wherein she testified that she had told another teacher (not Ross) to "watch your back side, you know, because I don't know what's going down," and that the other teacher "got all upset," which Jones conceded was Jones' fault and was "really ugly" on her part. Such testimony is both hearsay and not relevant to any issue before the jury, so it will be **excluded** on that basis.

On pages 41 and 42 of the Jones deposition, the witness professed to be speaking for an unspecified group of teachers as to what they thought or liked or believed. In particular, Jones testified that, even though she never heard anybody else express any concerns about dirty jokes told in the workplace, "we just didn't like it." That kind of speculation about other people's unspoken thoughts and feelings is obviously inappropriate; therefore, defendants' objection to that testimony is **sustained**. The same goes for the rampant hearsay on pages 42 through 46, wherein Jones testified to what other teachers had told her concerning their fears of retaliation by Beasley. Plaintiff does not even attempt to defend introduction of this obvious hearsay for the truth of the matter asserted, but instead insists that such evidence is admissible to show "notice to BCBE of a pattern of retaliatory conduct by Beasley which should have prompted an appropriate investigation by BCBE." (Doc. 125, at 12, ¶¶ 15-16.) Once again, plaintiff's reasoning is opaque and inscrutable. That some other teachers might have harbored secret, whispered, inchoate fears of retaliation by Beasley if they testified on Ross's behalf in this lawsuit or if they otherwise complained about Beasley does not show that the Board is or should have been on notice of anything. Besides, plaintiff has yet to make any compelling argument about why or how the issues of notice to the Board or the sufficiency of the Board's

---

acts) took against her after she complained that he had sexually harassed her. Although the Court has raised this question repeatedly in prior rulings in this case, the parties have never explained why it matters whether the Board was or was not on notice of Beasley's retaliatory acts. Plaintiff suggests that the existence of such notice might demonstrate that the Board "ratified" Beasley's retaliatory conduct; however, plaintiff does not explain how such "ratification" is necessary or appropriate to establish the Board's liability for the acts of its supervisor and final decisionmaker under the anti-retaliation provisions of Title VII.

investigation are even properly submitted to the jury here at all.  Again, the sole triable claim against the Board in this case identified in the parties' Amended Pretrial Order (doc. 126) is one of Title VII retaliation.  That claim is rooted in the alleged acts of retaliation perpetrated by Beasley (an elementary school principal and the Board's decisionmaker) against Ross after Ross complained of sexual harassment.  Whether the Board did or did not have notice appears irrelevant to that claim.  *See Ross v. Baldwin County Bd. of Educ.*, 2008 WL 820573, *6-8 (S.D. Ala. Mar. 24, 2008) (specifically addressing issue of whether notice to Board is an element of Ross's retaliation cause of action).

> ### B.      *References to Beasley's Alleged Relationship with Jernigan.*

Defendants also seek to exclude all portions of Jones' deposition transcript referencing the alleged inappropriate relationship between Beasley and his secretary, Jernigan.  For the reasons stated in Section I.A., *supra*, the Motions in Limine are **granted** in this respect.  All designated excerpts from the Jones deposition transcript describing or relating to that alleged inappropriate relationship are inadmissible and cannot be introduced at trial.  This ruling specifically encompasses the objected-to portions of pages 17 through 19, and 21-22 of the Jones deposition transcript.

> ### C.      *References to Other Bad Acts Relating to Other Employees.*

On pages 32 and 33 of her deposition transcript, Jones testified that she had challenged some of Beasley's decisions in staff meetings, and that following a "big, bad disagreement" concerning a teacher of the year issue, she was "blocked" in some unidentified way from going to the computer lab.  Jones also testified that Beasley stood at the end of her hall wearing a suit the day after that disagreement, which made her afraid.  Defendants object that this testimony is inadmissible character evidence, but plaintiff counters that such evidence is relevant to show Beasley's intent to retaliate against Ross.

As discussed *supra*, evidence of a supervisor's treatment of other employees may be relevant and admissible in an employment discrimination action to show intent, motive or plan. *See, e.g., Goldsmith*, 513 F.3d at 1286 ("We have upheld the admission of coworker testimony in a sexual harassment context under Rule 404(b) to prove the defendant's motive, ... intent, ... [or] plan to discriminate against the plaintiff.") (citations and internal quotations omitted).  But the Supreme Court's recent *Sprint* decision reflects that the admission of "other discrimination"

evidence turns on a fact-based inquiry examining such factors as how closely related the evidence is to the plaintiff's circumstances and theory of the case.  The circumstances described in Jones' testimony bear no resemblance to Ross's situation.  Unlike Ross, Jones did not complain to Beasley of sexual harassment; rather, the triggering incident was an alleged "big, bad disagreement" between the two of them wherein he "cursed and yelled" at her over who would be the teacher of the year.  And the alleged retaliation described by Jones consisted of Beasley wearing a suit and standing at the end of Jones' hall the next day.  Such benign conduct (which Jones described as "stalking" before admitting - quite prudently - that her word choice may have been wanting, based on her candid concession, "I don't know what stalking is") cannot support an inference of retaliation of the kind complained of by Ross in this case.  And Jones' testimony that she "would want to go down to the computer lab and [she] was, you know, blocked to get in there" is far too vague, undeveloped and attenuated from Beasley to suggest that he was retaliating against her.  Simply stated, the Court finds that the incidents described by Jones on pages 32 and 33 of her deposition are too far removed in nature, type and circumstances from the conduct at issue in this case to be probative on issues of intent or motive.  Alternatively, the Court finds that their meager probative value is dwarfed by the risk of confusion of the issues and the needless squandering of time on collateral matters.  The Motions in Limine are **granted** with respect to pages 32 and 33 of the Jones deposition transcript.

A similar issue arises with respect to pages 34 through 37, in which Jones testified that she had complained to Beasley for calling her "Mrs. Brogan," a teacher whom Jones believed he did not respect.  It is clear from Jones' testimony, however, that she did not personally take offense at this conduct but that she complained because she felt that reference was insulting to Mrs. Brogan.[6]  Jones also stated that she told Beasley "he couldn't tell me dirty jokes anymore." However, she did not identify any acts of retaliation that she believed Beasley visited upon her for having made those complaints.  As such, her complaints to Beasley concerning the "Mrs. Brogan" issue and the "dirty jokes" issue are not probative of the questions of intent or motive

---

[6]      In that regard, Jones explained that she defended Mrs. Brogan to Beasley, telling him that "Mrs. Brogan probably works more hours than the rest of us and, you know, you don't need to call me that."

because there is no evidence that he engaged in retaliatory conduct against her for having voiced such concerns.  These portions of Jones' deposition transcript are inadmissible on grounds of relevance, as well as the balancing considerations of Rule 403.

On a different footing is Jones' testimony on pages 38 through 40 of her deposition concerning Beasley's propensity to tell "dirty jokes" in the workplace and to foster an environment in which others did the same.  Such evidence is certainly relevant and admissible to demonstrate the existence of a sexually hostile work environment at the school, for purposes of advancing Ross's § 1983 sexual harassment cause of action against Beasley.  *See Goldsmith*, 513 F.3d at 1286 (explaining that "me too" evidence is admissible under Rule 402 to show a hostile work environment, where evidence establishes recurrent use of racial slurs by defendant's employees).  Far from describing "other acts" within the ambit of Rule 404(b), this testimony relates to the same hostile work environment that lies at the core of Ross's § 1983 claim against Beasley.  Defendants' 404(b) objections to the introduction of this portion of Jones' deposition transcript are **overruled**.[7]  The same conclusion applies to Jones' testimony on page 40 that a secretary had printed off an image of "the male anatomy" in the office and showed it to Jones. Again, this testimony goes to the existence of an environment fostered by Beasley that was permeated with sexual intimidation, ridicule and insult, and is therefore relevant to plaintiff's § 1983 claim against him.  Defendants' objection to that excerpt is **overruled**.

Beginning at the bottom of page 46 and continuing to the top of page 49, Jones testified on the following matters: (a) her belief that Beasley could not deny her grandson a zoning variance and that Beasley's wife would not do so; (b) Jones' testimony that she did not have concerns that Beasley would retaliate against her for any statements she might have made; and (c) her statement that she did not know how often Beasley engaged in dirty jokes because she left the room whenever they were brought up, but that such jokes tapered off after she

---

[7]        Defendants' alternative reasoning -- that Jones' testimony on this point is necessarily inadmissible because she testified that she could not remember the content of any of those dirty jokes -- is baseless on its face.  There is no evidentiary rule proscribing introduction of testimony concerning sexually inappropriate comments unless the witness remembers the specifics of those comments.  Here, Jones' inability to recall specifics goes to the weight which the jury may wish to afford the testimony, not to its admissibility.

complained.  Defendants' objections to these lines of testimony are without merit and are **overruled**.

      **D.**    ***References that Jones is Deceased.***

      Defendant Beasley requests that the Court enter an order forbidding plaintiff from informing the jury through any means that Jones is deceased.  Plaintiff has neglected to respond to this request; however, the Court has no reason to believe that plaintiff intends to elicit any testimony or make any comment concerning Jones' demise in the jury's presence.  To the extent that plaintiff intends to do so and believes that such information may permissibly be submitted to the jury, notwithstanding Beasley's objection, plaintiff's counsel is **ordered** to take up the matter with the Court and opposing counsel at a sidebar or otherwise out of the presence of the jury prior to eliciting any such evidence.  Thus, this aspect of the Motion in Limine is **carried to trial**.

**III.**    **Motions Regarding Plaintiff's Exhibits.**

      The final pair of Motions in Limine (docs. 112, 120) consist of a laundry list of objections by defendants to more than a dozen exhibits proffered by plaintiff, mostly on relevance grounds.  It is extraordinarily difficult to rule on these evidentiary objections in a vacuum, based on the parties' thumbnail sketches of their respective positions, without the context of the trial proceedings and an evidentiary framework against which to compare those exhibits.  For that reason, these Motions in Limine are **carried to trial**.

**IV.**    **Conclusion.**

      For all of the foregoing reasons, it is hereby **ordered** as follows:

    1.    Defendants' Motions in Limine Regarding Character Evidence (docs. 110, 117) are **granted in part** and **denied in part**.  They are **granted** insofar as plaintiff seeks to introduce evidence that Beasley had an inappropriate relationship with his secretary (Jernigan), and such evidence will be excluded.  In all other respects, the Motions are **denied** as too non-specific and vague.

    2.    Defendants' Motions in Limine Regarding Testimony of Linda Jones (docs. 114, 121) are **granted in part** and **denied in part**, as set forth above.  The portion of those Motions relating to the fact that Jones is deceased is **carried to trial**.

-11-

3.      Defendants' Motions in Limine Regarding Plaintiff's Exhibits (docs. 112, 120) are **carried to trial**, so as to enable the Court to have the benefit of the evidentiary context in ruling on the admissibility of such documents.

4.       The parties' requests for oral argument are **denied** to the extent that their Motions in Limine have been ruled on in this Order.  As to those portions of the Motions that have been carried to trial, the parties should be prepared to present oral argument and authority, as appropriate, to support their respective positions concerning the admissibility of the subject documents.

DONE and ORDERED this 9th day of May, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE